## Hazard *against* Hamlin.

An exchange of personal property has all the qualities of a sale, to which payment or delivery is essential; and which, without it, is but an executory agreement to sell which does not bind the property.

ERROR to the common pleas of *Huntingdon* county.

Thomas Hamlin against David Hazard. Replevin for a horse, in which these facts appeared.

James Allen and Thomas Hamlin made an exchange of horses in which Allen received the horse in controversy. In the evening of the same day Hamlin thought he was cheated, and so complained to Allen, when they agreed to rescind the bargain, upon Hamlin's giving him three bushels of wheat. The parties separated, without a re-delivery of the horses. Allen, disregarding the contract of rescision, sold the horse he got from Hamlin to Hazard the defendant.

[Hazard v. Hamlin.]

Subsequently, Hamlin tendered the wheat and demanded the horse; and then brought this action of replevin for him.

The counsel for the defendant, in several points put to the court, upon which he requested the jury to be instructed, contended for this principle:

That the contract of exchange was complete, and the right of property vested in the parties respectively: That the contract of re-scission was executory and not binding upon the property, so as to enable the party to recover it specifically.

The court was of a different opinion, and instructed the jury that the plaintiff was entitled to recover. Verdict for plaintiff.

*R. Wallace*, for plaintiff in error, cited 1 *Chit. Co.* 90; 3 *Blac. Com.* 158; Roberts *v.* Beatty, 2 *Penns. Rep.* 67; Pritchett *v.* Jones, 4 *Rawle* 260; Dutilh *v.* Ritchie, 1 *Dall.* 171.

*Bell*, contra, cited Easton *v.* Worthington, 5 *Serg. & Rawle* 130; 2 *Esp. Rep.* 578; 3 *Stark.* 1637; Leeky *v.* M'Dermot, 8 *Serg. & Rawle* 500; Clemson *v.* Davidson, 4 *Binn.* 405.

The opinion of the Court was delivered by

GIBSON, C. J.—By the original exchange, accompanied as it was by mutual delivery, the property was transferred and respectively vested. The parties stood in relation to it as if it had never been out of them, or had been acquired from a third person by the same sort of public transfer. Such was their position in regard to it and to each other, at the time of their subsequent transaction. Did their naked agreement to rescind, remit them to their former ownership, even as between themselves? The rescision was to produce not exactly a restoration of what each had acquired and no more, for one of them was to give a few bushels of wheat along with the property to be returned; but it was to be, in fact, a re-exchange, on somewhat new and peculiar terms. The variance, however, is unimportant, as the property could be revested but by the means used to divest it; of which, the most indispensable is delivery by at least one of the parties. An exchange has all the qualities of a sale, to which payment or delivery is essential; and which, without it, is but an executory agreement to sell that binds not the property. "With regard to the law of sales and exchanges," says the English commentator, "there is no difference." "If the vendor says the price of a beast is four pounds, and the vendee says he will give four pounds, the bargain is struck; and neither of them is at liberty to be off, provided *immediate* possession be tendered by the other side. But if neither the money be paid, nor the goods delivered, nor any subsequent agreement be entered into, it is no contract; and the owner may dispose of the goods as he pleases. But if any part of the price is paid down, if it be but a penny, or any portion of the goods

[Hazard v. Hamlin.]

delivered by way of earnest, the property of the goods is absolutely bound by it, and the vendee may recover the goods by action, as well as the vendor may the price of them." 2 *Commentaries* 477. Mr Christian, his annotator, adopts the very reasonable opinion of Lord Holt in Langford *v.* Tiler, 1 *Salk.* 113, that even earnest binds but the bargain and not the property—at least absolutely—that is, it gives the vendee a right to demand, but that demand, without payment of the whole, is void. It seems to have been the opinion of that sound lawyer and eminent judge, that the acceptance of earnest induced no more than an engagement on the part of the vendor to give the vendee a reasonable opportunity to consummate the bargain; and this is entirely consistent with what he immediately adds, that the vendor cannot sell the goods again before he has requested the vendee to pay for them and take them away: that is, as I understand it, without subjecting himself to an action for breach of the contract; for no one would pretend that payment of part of the price, if the article were left, as in that case, in the vendor's shop, where prejudice to customers from colourable ownership would be most likely to happen, would entitle the vendee to follow it into the hands of a purchaser. But where nothing is paid or delivered, it is agreed on all hands that the contract is merely executory. Now it would seem from the evidence in the case in hand, that there was no delivery of any thing at the time of the transaction, or afterwards; and that the plaintiff who claims through it, even made no tender of performance till a month had expired, when the other party was not bound to accept it. The jury ought to have been directed that if such were the fact, he had at most but an action for a breach of the contract.

But if the property could thus have been changed as to the parties, could it have been changed as to others? in a word, would not the contract have been fraudulent as to creditors or purchasers? All objections on the score of retained possession that can be made to a sale, may be made with equal effect to an exchange. Delivery of one of the articles may bind the ownership of the other, and be an available ground to recover it of the party; yet, if there be nothing to account for the detention, it may not authorise a recovery from a *bona fide* purchaser. The facts seem to be that the mare never was delivered to the plaintiff. He was told where possession was to be had; yet he made no effort to obtain it, or even, for several weeks, to perform his own part of the contract. We know not exactly when the property was parted with to the defendant; but it appears from the testimony of Stewart and John Hamlin, to have been a day or two after the agreement to rescind—certainly before the plaintiff's tender of performance. If such be the facts, they afford him not the shadow of a title; and the jury ought not to have been directed to the contrary.

Judgment reversed and a *venire de novo* awarded.